UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| Renegade Holdings, Inc., et al., ) | |
| ) | Case No. 09-50140 |
| Debtors. ) | |
| ) | |
| ) | |
| _____ ) | |
| ) | |
| Peter L. Tourtellot, Trustee for Renegade ) | |
| Holdings, Inc., Alternative Brands, Inc., ) | |
| and Renegade Tobacco Company, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Adversary Proceeding |
| vs. ) | No. 11-6007 |
| ) | |
| The Huntington National Bank, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION

This adversary proceeding came before the court for hearing on the Defendant's motion pursuant to Rule 7012 of the Federal Rules of Bankruptcy Procedure and Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the Plaintiff's amended complaint for failure to state a claim for relief, and for failure to plead claims with sufficient particularity as required by Rule 7008 of the Federal Rules of Bankruptcy Procedure and Rule 8 of the Federal Rules of Civil Procedure.

Benjamin A. Kahn appeared on behalf of the Defendant and Vicki L. Parrott appeared on behalf of the Plaintiff.

## STATEMENT OF THE CASE

In this proceeding the Plaintiff, as chapter 11 trustee for the Debtors, seeks to avoid guaranties in which the Debtors purported to guarantee the obligation of PTM Technologies, Inc. ("PTM") to the Defendant under a promissory note from PTM on the theory that the guaranties constitute fraudulent conveyances under section 548(a)(1)(B) of the Bankruptcy Code.

## DISCUSSION

The relief sought in this proceeding is the avoidance of obligations rather than the avoidance of a transfer of tangible property. In order to obtain such relief under section 548(a)(1)(B), a plaintiff must allege and prove that the obligations were incurred on or within two years before the date of the filing of the petition; that the debtor received less than a reasonably equivalent value in exchange for the obligations; and that the debtor either was insolvent on the date the obligations were incurred or became insolvent as a result of such obligations or that the debtor was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital, or intended to incur, or believed that the debtor would incur debts that

would be beyond the debtor's ability to pay as such debts matured, or made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

In moving to dismiss the amended complaint, Huntington, in part, relies upon the rule that a 12(b)(6) motion is properly granted if the face of the complaint presents an insurmountable bar to relief. See Minatsis v. Brown, 713 F. Supp. 1056, 1059 (S.D. Ohio 1989). Huntington argues that dismissal should be granted because it appears as a matter of law that the Debtors received reasonably equivalent value in exchange for executing the guaranties referred to in the amended complaint. According to Huntington, the reasonably equivalent value for their guaranties is the result of indirect benefit received by the Debtors from the loan that was extended to PTM. In making this argument, Huntington contends that the court should consider the facts alleged in the amended complaint and certain additional facts contained in other documents that are part of the record in cases are pending before this court. The main document relied upon by Huntington as a source of the facts to be considered is the disclosure statement filed by PTM in its chapter 11 case ( No. 10-50980).

As pointed out by Huntington, in ruling on whether a complaint states a claim for relief, a court may consider documents that are attached to the complaint or are

referred to in the complaint. See Fed. R. Civ. P. 10(c); Young v. Lepone, 305 F.3d 1, 11 (1st Cir. 2002). This rule is not applicable in this proceeding because the PTM disclosure statement is not attached to nor referred to in the amended complaint. Even so, Huntington argues that the contents of the disclosure statement should be considered because the court can "take judicial notice of its own records. . . ." While it is correct that a bankruptcy court can take judicial notice of its records, the fact that it does so does not mean that doing so will "magically result in the contents of the document attaining a sufficient degree of reliability to overcome evidentiary objections such as hearsay to its admissibility in a trial before a bankruptcy court." Barry Russell, Bankruptcy Evidence Manuel § 201:5 (2010). The contents of a document on file with the court may be binding and admissible as an admission by the party who filed the document, such as the contents of a debtor's schedules being admissible against the debtor. E.g. In re Kaskel, 269 B.R. 709 (Bankr. D. Idaho 2001); Larson v. Groos Bank, N.A., 204 B.R. 500 (W.D. Tex. 1996). The PTM disclosure statement, however, was not filed by the Plaintiff and there is nothing that indicates that he has approved or adopted the PTM disclosure statement or any of the other documents cited by Huntington. Hence, there is no basis for imputing the contents of such documents to the Plaintiff and considering the contents of such documents in ruling on a motion to dismiss the Plaintiff's amended complaint. See

In re Kirkland, 572 F.3d 838, 839-40 (10th Cir. 2009)(debtor's schedules not evidence against trustee); In re Plourde, 418 B.R. 495 n.13 (1st Cir. B.A.P. 2009).

There is no argument that the facts alleged in the amended complaint, standing alone, establish that the Debtors received reasonably equivalent value and, thus, Huntington's argument that reasonably equivalent value exists as a matter of law must fail. However, even if the extraneous facts relied upon by Huntington could be considered as asserted by Huntington, as explained below, there still is no showing of reasonably equivalent value as a matter of law.

As a general rule, obligations incurred by a debtor solely for the benefit of a third party are treated as not supported by a reasonably equivalent value. "Courts generally find a lack of reasonably equivalent value when the transfer or obligations benefits a third party, such as an individual's payment of a relative's debt or the giving of a guaranty of another's debts." 5 Collier on Bankruptcy ¶548.05[2][b] (16th ed. rev. 2011). It is sometimes said that in such a transaction, the debtor receives no "direct" benefit from the transfer or obligation. See Mellon Bank, N.A. v. Metro Communications, Inc., 945 F.2d 635, 646 (3rd Cir. 1991).

The factual allegations in the complaint and other documents clearly are sufficient to invoke this general rule. According to plaintiff's allegations, the loan

was extended by the lender[1] to PTM alone. The loan proceeds went to PTM and apparently were utilized by PTM alone to acquire the equipment. The obligation to repay the loan that was then guaranteed by the Debtors was that of PTM alone. Under these allegations, which are not disputed by Huntington, the Debtors received no direct benefit in the transaction, having received none of the loan proceeds and none of the property that was purchased with such proceeds.

The lack of direct benefit to the Debtors, however, does not end the inquiry regarding the motion to dismiss. As pointed out by Huntington, an exception to the above-stated general rule has been recognized where a debtor receives an indirect benefit from paying or guaranteeing the obligation of a third party. This exception is recognized "if the transfer does not negatively affect the debtor's net worth because the transfer caused the debtor to receive an indirect benefit. . . ." 2 Collier at ¶ 548.05[2][b]. An example of such indirect benefit is where the debtor and the third party "are so related or situated that they share an 'identity of interest' because what benefits one will, in such case, benefit the other to some degree." In re Ear, Nose and Throat Surgeons, Inc., 49 B.R. 316, 320 (Bankr. D. Mass. 1985) (quoting In re Royal Crown Bottlers, Inc., 23 B.R. 28, 30 (Bankr. N.D. Ala. 1982)).

---

[1]The loan was made originally by Maxus Capital Group, LLC, who then assigned the loan to Huntington. For ease of reference the loan hereafter will be referred to as the Huntington loan.

An indirect benefit suggested by Huntington is related to Renegade Holdings, Inc. ("RHI"), the parent of PTM. The guaranty from RHI is what is referred to as a "downstream" guaranty since it involves a parent corporation guaranteeing the obligation of a subsidiary. With a downstream guaranty, courts presume that the parent corporation received a benefit in the form of increased stock value resulting from the increased strength and value of its subsidiary that results from the subsidiary receiving the proceeds of the loan guaranteed by the parent. E.g. Branch v. Fed. Deposit Ins. Corp., 825 F. Supp. 384, 389 (D. Mass. 1993). "Generally, transfers to a solvent subsidiary are considered to be for reasonably equivalent value, because, since the parent is the sole shareholder of the subsidiary corporation, any benefit received by the subsidiary is also a benefit to the parent." Id. at 399-400.

This presumption of indirect benefit, however, is not available if the subsidiary or other party whose obligation was guaranteed is insolvent at the time of the transaction in which the guaranty is extended. Id. at 400; In re Duque Rodriguez, 77 B.R. 937, 939 (Bankr. S.D. Fla. 1987). The amended complaint in this proceeding effectively alleges that when RHI guaranteed PTM's obligation, PTM was insolvent. It follows, therefore, that the presumption of indirect benefit does not arise regarding the guaranty from RHI based upon the parent-subsidiary relationship. See Branch, 825 F. Supp. at 400.

The concept of indirect benefit also has been recognized and applied in cases involving so-called "cross-stream" guaranties in which two or more affiliated or sister corporations are engaged in combined or inter-related operations and one of the subsidiary corporations guarantees the obligation of another subsidiary engaged in such operations. E.g. Mellon Bank, N.A. v. Metro Communications, Inc., supra. Huntington argues that this concept of indirect benefit is applicable in this case and operates to project reasonably equivalent value as a matter of law based on the facts contained in the amended complaint and other documents. The facts relied upon by Huntington involve the relationship between the Debtors and PTM and the "coordinated operations" of the Debtors and PTM and the involvement of the PTM equipment in the conduct of such coordinated operations. Specifically, Huntington focuses on the fact that RHI is the parent of Alternative Brands, Inc. ("ABI") and Renegade Tobacco Company ("RTC"), as well as PTM, and that ABI and RTC are sister corporations to PTM. The "coordinated operations" argument is that the equipment provided by PTM is "integral" to the coordinated operations of the Debtors involving ABI using the equipment to fabricate tobacco products that are branded, retailed and sold by RTC. These circumstances are characterized by Huntington as giving rise to an "interdependency" among the Debtors and PTM. According to Huntington, the presence of reasonably equivalent value under these

facts does not depend upon whether the transaction and the use of the equipment, in fact, was successful or generated a positive outcome or return. Huntington argues that even in the face of failure, the mere expectation that there would be benefit can constitute value. In arguing that an investment or transaction that never materialized nonetheless may confer value, Huntington relies upon the decision in Mellon Bank, N.A. v. The Official Committee of Unsecured Creditors of R.M.I., Inc. (In re R.M.I., Inc.), 92 F.3d 139 (3d Cir. 1996), where the court stated:

> The question, then is how to determine whether an investment that failed to generate a positive return nevertheless conferred value on the debtor. We think our decision in Metro Communications, Inc. answers this question implicitly. We held there that the mere expectation that the fusion of two companies would produce a strong synergy (an expectation that turned out to be inaccurate in hindsight) would suffice to confer "value" so long as the expectation was "legitimate and reasonable.". . . Thus so long as there is some chance that a contemplated investment will generate a positive return at the time of the disputed transfer, we will find that value has been conferred. (Emphasis by the court).

Id. at 152. As the later Third Circuit case of In re Fruehauf Trailer Corp., 444 F.3d 203, 212 (3rd Cir. 2006), explained, "a court must consider, whether, 'based on the circumstances that existed at the time' of the transfer, it was 'legitimate and reasonable' to expect some value accruing to the debtor."

The court in R.M.I. makes clear, however, that determining whether any value was conferred on the debtor is only the first of two steps that are essential in determining whether "reasonably equivalent value" was conferred for purposes of section 548. Assuming that some value was conferred, the second, equally important step, is to then determine whether such value is reasonably equivalent to the value of the property transferred or the obligation incurred by the debtor. Id. at 152-53. "The test used to determine reasonably equivalent value in the context of a fraudulent conveyance requires the court to determine the value of what was transferred and to compare it to what was received." Barber v. Golden Seed Co., 129 F.3d 382, 387 (7th Cir. 1997). In a case involving indirect benefits, the indirect economic benefits must be measured and then compared to the obligations that the debtor incurred. R.M.I., Inc., 92 F.3d at 154. This does not mean, however, that there is a per se rule requiring a precise calculation of the cash value of intangible costs and benefits in every case. Instead, "in those cases where a court has sufficient evidence to conclude, based on a totality of the circumstances, that the benefits to the debtor are minimal and certainly not equivalent to the value of a substantial outlay of assets, the plaintiff need not prove the precise value of the benefit because such a calculation is unnecessary to the court's analysis." Fruehauf, 444 F.3d at 214.

Under these authorities, the facts from the amended complaint and other

documents cited by Huntington are insufficient to establish as a matter of law that the Debtors received indirect benefits that produced value that was reasonably equivalent to the amount of the obligations incurred by the Debtors under the guaranties executed on May 6, 2008.  Even if it could be concluded from the facts before the court that the Debtors received <u>some</u> value as a result of indirect benefits flowing from the transaction, those facts fall short of providing a basis for quantifying any such value and concluding as a matter of law that any such value was reasonably equivalent to the obligation incurred by the Debtors.  "Quantification depends upon the business opportunities the additional credit makes available to the borrowing corporation and on other imponderables in the operation or expansion of its business."  <u>Metro Communications</u>, 945 F.2d at 647.   While the amended complaint and other documents reflect that the Debtors were and are affiliated companies and that ABI leased various items of equipment from PTM that were used to fabricate tobacco products that are branded and marketed by RTC, there are insufficient facts in the complaint and related documents regarding the nature and extent of the business operations of the Debtors and the manner in which the particular equipment acquired with the Huntington loan could be utilized in such operations for the court to make the kind of assessment required in addressing reasonable equivalency.  Also, the totality of the circumstances to be considered in assessing and weighing value versus

obligation in this case includes the insolvency described in the amended complaint and whether the enterprise involving the Debtors and PTM was commercially viable. Such insolvency injects imponderables that are not sufficiently fleshed out to be weighed and evaluated at this time. In short, there is an insufficient factual basis from which it can be concluded as a matter of law that the Debtors received indirect benefits as a result of PTM obtaining the Huntington loan with a value that was reasonably equivalent to the obligation they assumed under their guaranties. The amended complaint therefore may not be dismissed on that basis.

Turning its focus to the amended complaint itself, Huntington argues that the amended complaint does not contain a sufficient factual basis for a claim under section 548(a)(1)(B) and therefore may be dismissed pursuant to Rules 8 and 12(b)(6) for failure to state a claim upon which relief can be granted. This argument also is not accepted.

In order to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. ___, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A motion to dismiss should be considered using a two-pronged approach. Iqbal, 129 S.Ct. at 1950. First, a court must accept as true all

factual allegations contained in a complaint. Id. at 1949. Once a court assumes the truth of well-pleaded factual allegations, it should "then determine whether they plausibly give rise to an entitlement to relief." Id. In order for a claim to be facially plausible, a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable" and must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." Id. at 1949 (citing Twombly, 550 U.S. at 556). Whether a complaint states a plausible claim for relief will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. Applying the foregoing standards in the present proceeding, the court is satisfied that the Plaintiff's complaint is sufficient to state a claim upon which relief can be granted.

The amended complaint does not assert a wholly conclusory statement of claim as urged by Huntington. The amended complaint alleges that PTM, and not the Debtors, was the recipient of the loan proceeds and that the equipment involved in the transaction was acquired by PTM. The facts alleged in the amended complaint thus fully support the allegation that the Debtors received no direct benefit from incurring the obligations arising from the guaranties. See Metro Communications, 945 F.2d at 646 ("Because Metro did not receive the proceeds of the acquisition loan, it did not receive any direct benefits from extending the guaranty and security interest

collateralizing the guaranty."). The presumption arising from such a transaction is that the Debtors did not receive reasonably equivalent value for incurring the obligations created by the guaranties. Additionally, as discussed above, the amended complaint also contains detailed factual allegations regarding the poor financial condition of the Debtors and PTM at the time of the Huntington transaction. These allegations fully support the Plaintiff's allegations that the Debtors and PTM were insolvent both in the sense of being unable to pay their debts as they came due and in the sense that their liabilities exceeded their assets. These allegations preclude there being any presumption of indirect benefits as a result of the relationship of the parties. See Jack F. Williams, The Fallacies of Contemporary Fraudulent Conveyance Models as Applied to Intercorporate Guaranties, 15 Cardozo L. Rev. 1403, 1431 (1994)("The identity of interests and indirect benefits doctrines are impotent when no viable commercial enterprise exists."); and In re Worldwide, Ltd.139 F.3d 574 (7th Cir. 1998); Branch, 825 F. Supp. at 400; In re Duque Rodrigez, 77 B.R. at 939. By including factual allegations that give rise to a reasonable inference that the companies, either separately or together, were not commercially viable at the time of the Huntington transaction, the Plaintiff has effectively alleged a lack of indirect benefits and no further allegations are required in order to survive a 12(b)(6) motion. See Branch, 825 F. Supp. at 400 (overruling a motion to dismiss a claim under section

548(a)(1)(B) because, for purposes of surviving a Rule 12(b)(6) motion to dismiss, allegations of insolvency "are sufficient to overcome the presumption in favor of equivalent value. . . ." ).

The court, therefore, concludes that the allegations in the amended complaint are sufficient to state a plausible claim that the Debtors did not receive reasonably equivalent value for guaranteeing the indebtedness of PTM. The amended complaint therefore states a claim for relief under section 548(a)(1)(B) and is not subject to dismissal under either Rule 8 or Rule 12(b)(6). Accordingly, an order overruling and denying the Defendant's motion to dismiss is being entered contemporaneously with the filing of this memorandum opinion.

This 20ᵗᴴ day of July, 2011.

_____

WILLIAM L. STOCKS
United States Bankruptcy Judge

PARTIES IN INTEREST

Vicki L. Parrott, Esq.
P.O. Box 2208
Chapel Hill, NC 27514-2208

Benjamin A. Kahn, Esq.
P.O. Box 3463
Greensboro, NC 27408